WM

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED

'07 DEC 20 AM 9:41

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: DEPUTY

| | |
|---|---|
| **UNITED STATES OF AMERICA,** Plaintiff, | Magistrate Case No. '07 MJ 2941 |
| v. | COMPLAINT FOR VIOLATION OF: |
| **Def 1) Erin Nicole TOVAR,** | Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii) Transportation of Illegal Aliens |
| **Def 2) Renee Carlen LEWIS** Defendant(s) | |

The undersigned complainant, being duly sworn, states:

On or about **December 18, 2007,** within the Southern District of California, defendants **Erin Nicole TOVAR and Renee Carlen LEWIS** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Romualdo ARANDA-Bahena, Jose ARANDA-Bahena,** and **Daniel RAMIREZ-Serrano** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **20th** DAY OF **DECEMBER, 2007**

William McCurine Jr.
UNITED STATES MAGISTRATE JUDGE

**CONTINUATION OF COMPLAINT:**
**1.) Erin Nicole TOVAR**
**2.) Renee Carlen LEWIS**

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Romualdo ARANDA-Bahena, Jose ARANDA-Bahena, and Daniel RAMIREZ-Serrano** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On December 18, 2007, Border Patrol Agents P. Padilla and L. Valdivia of the Campo Station Field Intelligence Unit (FIU) were assigned plainclothes intelligence gathering duties and utilizing unmarked vehicles in the Campo Station area of operations. Agents Padilla and Valdivia were focusing on the Far Valley area of Campo off of Shockey Truck Trail. Far Valley is located approximately thirteen miles east of the Tecate, California Port of Entry and approximately two miles north of the United States/Mexico border. Agent Padilla contacted Border Patrol Agents J. Diaz and J. Vasquez of the El Cajon Station Intelligence Unit to assist them with surveillance of vehicle traffic entering and exiting Shockey Truck Trail at Highway 94. Agents Diaz and Vasquez were also in plainclothes and operating unmarked Service vehicles.

At approximately 11:10 AM, Agents Padilla and Valdivia were parked behind a small tree east of the intersection of Shockey Truck Trail and Highway 94 when they observed a gray minivan with heavily tinted windows turn south on Shockey Truck Trail from Highway 94. The use of heavy tint or spray painted windows is also a common trait of smuggling vehicles designed to prevent the visual detection of the smuggled people or contraband inside. Approximately fifteen minutes later, Agents Padilla and Valdivia observed what they believed to be the same gray minivan approach the intersection from the south. As the vehicle turned west on Highway 94, the agents observed that the rear of the minivan now appeared heavy, sagging compared to when they first observed it, as if it were now transporting additional passengers or cargo, although only the driver was visible. Agent Padilla communicated their observations via Agency radio to Agent Diaz, who was parked along Highway 94 between Shockey Truck Trail and Sheridan Road.

At approximately 11:25 AM, shortly after receiving the information from Agent Padilla, Agent Diaz observed a gray Dodge Caravan minivan pass him heading west on Highway 94. Agent Diaz observed that the vehicle appeared to be heavily laden, although the driver was the only visible occupant of the vehicle. Agent Diaz also observed that the gray Dodge minivan was now being followed closely by a green Ford Thunderbird which also appeared to be heavily laden despite the fact that only a driver was visible in that vehicle as well. Agent Diaz began following the gray Dodge minivan and the green Ford Thunderbird west on Highway 94 to observe the two suspected smuggling vehicles further and to attempt to run registration checks on the license plates of both vehicles.

As Agent Diaz followed behind the two vehicles, still traveling closely together, he observed that the green Ford Thunderbird was bouncing up and down. Agent Diaz relayed his observations via Agency radio, and Agents Vasquez, Padilla and Valdivia began responding to the area. Agent Diaz subsequently advised the responding agents that both vehicles had abruptly turned north off of Highway 94 onto an unpaved road known to agents as the "Recycling Center Road," located just west of Sheridan Road. This type of abrupt change of course is commonly seen in smuggling vehicles conducting counter surveillance or attempting to evade following vehicles. As the vehicles turned north onto the dirt road, Agent Diaz was able to observe that the drivers of both vehicles were female. The green Ford Thunderbird accelerated past the gray Dodge minivan and continued north at a high rate of speed. Agent Diaz observed that the gray Dodge minivan also began to accelerate. Both vehicles then made a sharp right turn and headed east along another dirt road known to agents as the "Hicks Cut". Moments later, the gray Dodge Caravan minivan came to an abrupt

**CONTINUATION OF COMPLAINT:**
**1.) Erin Nicole TOVAR**
**2.) Renee Calen LEWIS**

stop, pulling off the roadway into the brush on the south side of the road. The green Ford Thunderbird continued to accelerate east and out of sight.

Agent Diaz stopped his Agency vehicle and exited, observing that the passengers of the gray Dodge minivan were exiting and attempting to abscond. Agent Diaz also observed a female subject, later identified as **Renee Carlen LEWIS**, exit the driver's door and run south into the brush. Agent Diaz pursued LEWIS and a male subject on foot and apprehended both of them. Agent Diaz identified himself as a United States Border Patrol Agent and questioned both subjects about their immigration status. The male subject stated that he was a citizen of Mexico, illegally present in the United States. LEWIS stated that she was a United States citizen. Both subjects were placed under arrest. Agent Vasquez had arrived on scene and apprehended the other four passengers of the gray Dodge minivan. Agent Vasquez identified himself as a United States Border Patrol Agent and questioned each subject individually as to their citizenship and status in the United States. All four subjects stated that they were citizens of Mexico present in the United States illegally. Agent Vasquez placed all four subjects under arrest.

Agent Diaz escorted LEWIS and the male smuggled alien back to the vehicles. Upon reaching the scene of the bailout, LEWIS spontaneously uttered that she could not believe that she was caught again and stated that she had just been arrested by the Border Patrol a few days back. LEWIS also stated that the driver of the green Ford knew where they where going, but that she had lost her in the cloud of dirt dust. LEWIS again blurted out that she could not believe that she was caught smuggling again.

At approximately the same time that agents were pursuing the occupants of the gray Dodge minivan, Border Patrol Agent Jimmi Garcia encountered the green Ford Thunderbird traveling south on 'Recycling Center Road' as he responded to the scene. Agent Garcia activated the emergency equipment on his marked Agency vehicle and conducted a stop on the suspected smuggling conveyance. Agent Garcia identified himself as a United States Border Patrol Agent and questioned the driver concerning her citizenship. The driver identified herself **Erin Nicole TOVAR** a United States citizen. Although no other passengers were found in the green Ford thunderbird, TOVAR was arrested on suspicion of alien smuggling. TOVAR, LEWIS the five smuggled aliens and both smuggling conveyances were transported to the Campo Border Patrol Station for processing.

Border Patrol Agent Walter Martinez subsequently informed Agent Miele that one of the female aliens apprehended with the gray Dodge minivan had expressed concern that her pregnant cousin, Felix GUTIERREZ, had gotten into the second vehicle and was not arrested by agents. Interviews with arrested alien Romualdo ARANDA-Bahena revealed that his brother, Jose ARANDA-Bahena, had also boarded the second vehicle, a green car, and was not arrested. All five smuggled aliens were questioned and all five stated that there were three subjects who had gotten into the second vehicle and were not arrested. All five expressed concern that these subjects had been left out in the cold with no food or water. Agent Miele approached TOVAR and relayed the concerns of the family members and informed her that the female subject was pregnant.

Agents Miele and Valdivia returned to the scene of the bailout and continued east along the 'Hicks Cut' looking for tracks indicating where TOVAR might have dropped off her smuggled aliens. This triggered Agent Miele's memory of an abandoned property north of the "Hick's Cut" with several dilapidated, uninhabited trailers. Agents Miele and Valdivia entered the property and began looking into the trailers. On the east end of the property, Agent Miele was able to observe several suspected illegal aliens inside one of

WMC

**CONTINUATION OF COMPLAINT:**
**1.) Erin Nicole TOVAR**
**2.) Renee Calen LEWIS**

the trailers. Agent Miele pulled back the towel covering the doorway and observed a female subject and two male subjects inside. Agent Miele asked the elder male subject if he was Jose ARANDA, and the subject replied that he was. Agent Miele then asked the female subject of she was Felix GUTIERREZ, and she began to cry and stated that she was. Agent Miele identified himself and Agent Valdivia as Border Patrol Agents and reassured GUTIERREZ that everything was going to be alright and she would be reunited with her cousins. All three subjects freely admitted to being Mexican citizens in the United States illegally. All three were arrested and transported back to Campo Station.

**MATERIAL WITNESSES STATEMENTS:**

Material Witnesses **Romualdo ARANDA-Bahena, Jose ARANDA-Bahena**, **and Daniel RAMIREZ-Serrano** stated that they are citizens and nationals of Mexico illegally present in the United States. They stated that they did not have any immigration documents allowing them to be in the United States legally. They stated that arrangements had been made in Baja California, Mexico to be smuggled into the United States. All the material witnesses stated that they were to pay between $2,000.00 to $3,000.00 U.S. dollars to be smuggled to various parts of the United States. All the material witnesses stated that foot guides led them across the border. All the material witnesses stated that the foot guide had a two way radio. All the material witnesses stated that they were taken to a location and were told to wait for a pick up vehicle. The material witnesses stated that they loaded into two vehicles. When shown a photographic lineup, none of the material witnesses could identify defendant LEWIS as the driver of the van. Material witnesses Jose ARANDA- Bahena and Daniel RAMIREZ-Serrano could identify defendant TOVAR as the driver of the Ford Thuderbird.

James Trombley
Senior Patrol Agent

William McCurine Jr.
U.S. Magistrate Judge

12/20/07 0920 hrs
Date/Time